UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: _____

TAIWAN WILLIAMS,

    *Plaintiff,*

v.

JACOBS ENGINEERING GROUP,
INC./OPERATIONS MANAGEMENT
INTERNATIONAL, INC.,

    *Defendant.*

_____/

## OPERATIONS MANAGEMENT INTERNATIONAL, INC.'S NOTICE OF REMOVAL

Defendant, Operations Management International, Inc. ("Defendant"), incorrectly named herein as JACOBS ENGINEERING GROUP, INC./OPERATIONS MANAGEMENT INTERNATIONAL, INC.,[1] hereby moves pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, for the removal of the above-styled cause of action from the Circuit Court of the Third Judicial Circuit in and for Suwanee County, Florida to the United States District Court for the Middle District

---

[1] The Plaintiff's employer, which would be the party to the lawsuit, was Operations Management International, Inc.

of Florida, Jacksonville Division, on the grounds of diversity of citizenship. In support thereof, Defendant states as follows:

## I. INTRODUCTION

1. On or about September 17, 2021, Plaintiff filed an action in the Circuit Court of the Third Judicial Circuit in and for Suwanee County, Florida, entitled *Taiwan Williams v. Jacobs Engineering Group, Inc./Operations Management International, Inc.*, Case No. 21-CA-144 (hereafter referred to as the "State Court Action").

2. Plaintiff's Complaint contains the following three counts against Defendant and Jacobs Engineering Group, Inc. ("JEG"): (1) Race Discrimination (Count I); (2) Retaliation – Chapter 760 (Count II); (3) Private Whistleblower Retaliation (Count III). A true and correct copy of all papers currently on file with the state court is attached as Composite Exhibit A.

3. Defendant was served with the Complaint and Summons on December 9, 2021. A copy of the Summons reflecting service of process on Defendant is attached as Exhibit B. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it is filed within thirty (30) days from the date on which Plaintiff served process on Defendant.[2]

---

[2] JEG was also served with the Complaint on December 9, 2019. A copy of the Summons reflecting service of process on JEG is attached as Exhibit C.

4. This case is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1332, and it is one that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. More specifically, this is an action between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Pursuant to 28 U.S.C. § 1446(a), the District and Division where this action is pending is the United States District Court for the Middle District of Florida, Jacksonville Division, and Defendant properly seeks to remove this action to this Court.

6. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a copy of the Notice of Removal with the Clerk of the Circuit Court of the Third Judicial Circuit in and for Suwanee County, Florida, and simultaneously provide written notice of the filing of this Notice of Removal to Plaintiff as reflected by the Certificate of Service.

7. JEG consents to the removal of the State Court Action.

## II. THIS ACTION IS ONE BETWEEN CITIZENS OF DIFFERENT STATES

8. In order to qualify for diversity jurisdiction, there must be complete diversity between the parties, which means that no plaintiff may be a citizen of the same state as any defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp.2d 1354, 1356 (S.D. Fla. 1998) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.

1996) (*overruled on other grounds* by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000)).

9. In his Complaint, Plaintiff states that he is an individual residing in Florida and that he was an employee of Defendant in Florida. *See* Complaint, ¶¶3, 6. Accordingly, Plaintiff is a citizen of the State of Florida for purposes of diversity jurisdiction.

10. Pursuant to 28 U.S.C. §1332(c)(1), a corporation is deemed to be a citizen of any State by which it has been incorporated and of any State where it has its principal place of business.

11. In the Complaint, Plaintiff incorrectly alleges that "JACOBS ENGINEERING GROUP, INC./OPERATIONS MANAGEMENT INTERNATIONAL, INC. has been organized and existing under the laws of the State of Florida." *See* Complaint, ¶4. In fact, there is no entity called "JACOBS ENGINEERING GROUP, INC./OPERATIONS MANAGEMENT INTERNATIONAL, INC." related to Defendant. Rather, there are two separate entities: (1) JEG; and (2) Defendant.

12. Although Plaintiff named the party defendant in this action as though there was a separate entity called "JACOBS ENGINEERING GROUP, INC./OPERATIONS MANAGEMENT INTERNATIONAL, INC.", Plaintiff individually served JEG and Defendant in this action, recognizing they are

separate entities and that they are actually the Defendants in this action. Exs. B & C.

13. Defendant is a California corporation and has its principal place of business in Colorado. Ex. D. As a result, it is *not* a corporate citizen of Florida for purposes of 28 U.S.C. § 1332.

14. To the extent that Jacobs Engineering Group Inc. is intended to also be a party defendant despite the fact that it did not employ Plaintiff, it is a Delaware corporation and has its principal place of business in Texas. Ex. E. As a result, it is *not* a corporate citizen of Florida for purposes of 28 U.S.C. § 1332.

15. Accordingly, diversity of citizenship existed between Plaintiff and Defendant (and any variation of defendants Plaintiff attempted to name in the State Court Action) at the time Plaintiff commenced this action in state court, and it continues to exist as of the time of filing this Notice of Removal.

### III. THE AMOUNT IN CONTROVERSY EXCEEDS THE STATUTORY THRESHOLD

16. Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction requires that the amount in controversy "exceed the sum or value of $75,000.00."

17. The amount in controversy requirement is clearly satisfied in this case because Plaintiff's purported damages, exclusive of interest and costs, exceed the $75,000 threshold. More specifically, in his Complaint, Plaintiff alleges that, as a result of Defendant's actions, he is entitled to relief that includes, but is not limited

to: (a) compensatory damages for emotional distress, mental pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, damage to reputation, illness and other non-pecuniary losses and intangible damages; (b) lost back and front pay, interest on pay, bonuses and other benefits; (c) injunctive/equitable relief; (d) punitive damages; (e) attorney's fees and costs; and (f) other relief. *See* Compl.

18. The Florida Civil Rights Act authorizes courts to award back pay, compensatory damages, punitive damages and attorney's fees and costs. Fla. Stat. § 760.11(5). The Florida Whistleblower Act authorizes courts to award compensation for lost wages, compensatory damages, and attorney's fees and costs. Fla. Stat. §§ 448.103-104.

19. Plaintiff does not say anything in the Complaint about the amount of damages that he seeks, other than to claim that this is an action for damages "in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest." Compl., ¶2.

20. In the Eleventh Circuit, where a plaintiff has made an unspecified demand for damages, a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement ($75,000.00). *See Tapscott v. MS Dealer Service, Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) (citing

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); 28 U.S.C. §§ 1332 and 1441. This is a "relatively low burden." *Fuller v. Exxon Corp.*, 78 F. Supp.2d 1289, 1297 (S.D. Ala. 1999). Where the jurisdictional amount is not facially apparent from the Complaint, the Court may consider facts set forth in the removal petition. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

21. Furthermore, when a plaintiff's damages are unspecified, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010). Thus, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. *Id*. at 1062.

22. Plaintiff was employed by Defendant until October 9, 2019. He was compensated by Defendant via an hourly rate of pay, and his final rate of pay was $15.03 per hour. That was his hourly rate of pay from February 23, 2019 until his termination. Plaintiff was also paid overtime compensation when he worked more than 40 hours in a workweek, and some weeks he earned extra compensation beyond his hourly wages.

23. Mr. Williams' Earnings Statements show that he earned the following gross amounts during the last six months of his employment:

- **$601.20 from April 6 to 12, 2019**
- **$748.84 from April 13 to 19, 2019**
- **$612.49 from April 20 to 26, 2019**
- **$601.20 from April 27 to May 3, 2019**
- **$601.21 from May 4 to May 10, 2019**
- **$601.20 from May 11 to 17, 2019**
- **$1,016.47 from May 18 to 24, 2019**
- **$736.47 from May 25 to 31, 2019**
- **$601.20 from June 1 to 7, 2019**
- **$721.20 from June 8 to 14, 2019**
- **$681.20 from June 15 to 21, 2019**
- **$601.20 from June 22 to 28, 2019**
- **$601.20 from June 29 to July 5, 2019**
- **$763.75 from July 6 to 12, 2019**
- **$808.84 from July 13 to 19, 2019**
- **$621.20 from July 20 to 26, 2019**
- **$608.72 from July 27 to August 2, 2019**
- **$1,068.11 from August 3 to 9, 2019**
- **$820.11 from August 10 to 16, 2019**
- **$635.03 from August 17 to 23, 2019**
- **$601.20 from August 24 to 30, 2019**
- **$899.02 from August 31 to September 6, 2019**
- **$786.30 from September 7 to 13, 2019**
- **$741.20 from September 14 to 20, 2019**
- **$876.48 from September 21 to 27, 2019**
- **$820.11 from September 28 to October 4, 2019**
- **$460.72 from October 5 to 11, 2019**

24. Based on that information, during the last six (6) months of Plaintiff's employment, Plaintiff's average weekly gross wages totaled approximately $712.44.

25. As indicated above, Plaintiff seeks to recover back pay in the instant action. In calculating potential lost wages for jurisdictional purposes, it is proper to calculate the figure through the trial date. *See Risk v. JetBlue Airways Corp.*, 2017 U.S. Dist. LEXIS 62542, *9 (S.D. Fla. Apr. 24, 2017) (in examining the amount in controversy, back pay should be calculated from date of termination through trial date); *Messina v. Chanel, Inc.*, 2011 U.S. Dist. 71138, *5-6 (S.D. Fla. Jul. 1, 2011) (same); *Avalos v. SDI of Gulf Breeze*, 2010 U.S. Dist. LEXIS 152378, *6 (N.D. Fla. Dec. 15, 2010) (same).

26. A reasonable estimate of a trial date would be approximately one year from the date of removal. Thus, from October 9, 2019 (the date that Plaintiff's employment ended) to January 7, 2023 (one year from the date of removal), Plaintiff has potential unmitigated back pay of $120,402.36,[3] without any accounting for potential front pay, non-monetary fringe benefits, compensatory damages, punitive damages, or attorney's fees. Even if the amount in controversy is only measured through the date of removal, Plaintiff has potential unmitigated back pay of $83,355.48.[4]

---

[3] This figure was calculated as follows: $712.44 (Plaintiff's average weekly earnings) x 169 weeks (the number of workweeks between October 9, 2019 and January 7, 2023).

[4] This figure was calculated as follows: $712.44 (Plaintiff's average weekly earnings) x 117 weeks (the number of workweeks between October 9, 2019 and January 7, 2022).

27. As noted above, Plaintiff also seeks to recover front pay. Front pay may also be considered in assessing the amount-in-controversy. *See Booker v. Doyon Sec. Servs., LLC,* 2017 U.S. Dist. LEXIS 220781, *9 (S.D. Fla. Jan. 20, 2017); *see also Brown v. Cunningham Lindsey U.S., Inc.* 2005 U.S. Dist. LEXIS 38862, *14-15 (M.D. Fla. May 11, 2005) (crediting one year of back pay *plus* one year of front pay, as a conservative measure of potential lost wages in a wrongful termination case); *Avalos*, 2010 U.S. Dist. LEXIS 152378, *6-7 (recognizing front pay is part of jurisdictional calculation). Based on Plaintiff's compensation at the time of his termination, one year of front pay is the equivalent of $37,046.88.[5] Thus, in lost wages alone, Plaintiff's claims exceed the minimum amount in controversy.

28. As noted above, Plaintiff also seeks to recover compensatory damages for emotional distress, embarrassment and humiliation. Plaintiff's compensatory damages may include a variety of intangible, non-economic losses that potentially exceed the jurisdictional minimum. *See* generally, *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.* 2007 WL 2774250 (S.D. Fla. 2007) (general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc. sufficient to put defendant on notice that jurisdictional minimum was satisfied). Even "garden-variety" compensatory damages in employment

---

[5] This figure was calculated as follows: $712.44 (Plaintiff's average weekly earnings) x 52 weeks.

termination cases may significantly increase the amount in controversy. *Cunningham Lindsey,* 2005 U.S. Dist. LEXIS 38862, *17 (citing *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000)). The potential amount of compensatory damages should also be considered for removal purposes. *Avalos*, 2010 U.S. Dist. LEXIS 152378, *7.

29. Plaintiff also alleges in his Complaint that he seeks to recover punitive damages from Defendant in the instant action, a potential remedy that the FCRA expressly identifies (and caps at a maximum of $100,000). *See* Fla. Stat. §760.11(5).

30. Compensatory and punitive damages must be considered as well when calculating the amount in controversy. *See Avalos*, 2010 U.S. Dist. LEXIS 152378, *6-7; *Awad v. Cici Enterprises,* 2006 U.S. Dist. LEXIS 71998, *3-4 (M.D. Fla. Oct. 3, 2006); *Cunningham Lindsey,* 2005 U.S. Dist. LEXIS 38862, *16-17. The potential recovery of compensatory and punitive damages establishes the amount in controversy is over $75,000. *See Avalos*, 2010 U.S. Dist. LEXIS 152378, *7 ("the plaintiff's compensatory damages alone could exceed the jurisdictional requirement, as could his punitive damages, particularly considering that the plaintiff has asserted a retaliation claim"); *Booker,* 2017 U.S. Dist. LEXIS 220781 at *10-11 ("based on punitive damages alone, the amount in controversy exceeds $75,000"; FCRA case).

31. As also noted above, Plaintiff further alleges that Defendant is liable for his attorney's fees pursuant to the FCRA. Therefore, a reasonable estimate of such fees is included in assessing the amount in controversy. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy").

32. The Court can take judicial notice that attorney's fees sought in similar employment termination cases in the Southern District of Florida routinely approach or exceed the $75,000 threshold. *See Alshakanbeh v. Food Lion, LLC*, 2007 U.S. Dist. LEXIS 20746, *4-7 (M.D. Fla. Mar. 23, 2007) (estimate of $40,000 for attorney's fees in Jacksonville employment discrimination case was "conservative"). Given the scope of Plaintiff's allegations, "garden variety" attorney's fees of $40,000-50,000 are a very conservative estimate of this potential component of the amount in controversy in this case.

WHEREFORE, Defendant requests that this action, now pending in the Circuit Court of the Third Judicial Circuit in and for Suwanee County, Florida, be removed to the United States District Court for the Middle District of Florida, Jacksonville Division

Dated this 7th day of January 2022.

    Respectfully submitted,

    By: /s/ *Stefanie M. Mederos*
    Stefanie M. Mederos, Esq.
    Florida Bar No.: 12041
    E-mail: *smederos@littler.com*
    LITTLER MENDELSON, P.C.
    Wells Fargo Center
    333 SE 2nd Avenue, Suite 2700
    Miami, FL 33131
    Telephone: (305) 400-7530
    Facsimile: (305) 603-2552

    Allison Wiggins, Esq.
    Fla. Bar No.: 105733
    Email: *awiggins@littler.com*
    LITTLER MENDELSON, P.C.
    111 N. Orange Ave., Suite 1750
    Orlando, FL 32801
    Telephone: (407) 393-2900

    *COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of January, 2022, a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

    /s/ *Stefanie M. Mederos*
       Stefanie M. Mederos, Esq.

## **SERVICE LIST**

Marie A. Mattox, Esq.
Florida Bar No. 0739685
Email: *Marie@mattoxlaw.com*
Email: *marlene@mattoxlaw.com*
Email: *michelle@mattoxlaw.com*
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
Telephone No.: (850) 383-4800
Facsimile No.: (850) 383-4801

4872-7705-1400.2 / 089773-1026