**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TAIWAN WILLIAMS,

    Plaintiff,

v.                                                   Case No. 3:22-cv-26-TJC-PDB

JACOBS ENGINEERING GROUP,
INC. and OPERATIONS
MANAGEMENT
INTERNATIONAL, INC.,

    Defendants.

## O R D E R

This employment discrimination and retaliation case is before the Court on a Motion to Dismiss filed by Defendants, Jacobs Engineering Group, Inc. ("Jacobs") and Operations Management International, Inc. ("OMI") (Doc. 13), to which Plaintiff Taiwan Williams responded (Doc. 24). Defendants moved to dismiss Williams' original complaint, but Williams voluntarily amended his complaint twice after. (See Docs. 6, 8, 27). Accordingly, Defendants' most recent Motion to Dismiss challenges Williams' Second Amended Complaint.[1] (See Docs. 13, 27).

---

[1] Defendants' Motion to Dismiss is directed towards the First Amended Complaint. (Doc. 13 at 1). However, because Williams filed his Second Amended Complaint only to correct typographical errors, the Court construes Defendants' Motion as directed to the Second Amended Complaint. (See Docs. 25, 26).

## I. BACKGROUND

Williams brings a ten-count Second Amended Complaint against his former employers, Jacobs and OMI. (Doc. 27 at ¶¶ 50–111). Williams alleges he was jointly employed as a Utility Worker for Defendants Jacobs and OMI, beginning in 2017 and through 2019. Id. at ¶¶ 7–13. From December 2018 through October 2019, Williams alleges he experienced "disparate treatment, different terms and conditions of employment, and was held to a different standard because of his race (black), and because he reported Defendants' unlawful employment activities and was subject to retaliation thereafter." Id. at ¶¶ 14, 16. He then alleges a series of actions by his employers that occurred throughout the ten-month period.

He first alleges an incident in 2018 where Defendants wrongfully suspended Williams because he performed an unauthorized task on private property. Id. at ¶¶ 17–18. Williams reported his suspension as discrimination to Defendants' Human Resources Department and Employee Hotline, but he alleges that soon after, his employers began treating him differently than his white coworkers. Id. at ¶¶ 19–20. Then, in Spring 2019, Defendants provided him with an unsafe work vehicle, while assigning newer vehicles to Williams' white colleagues. Id. at ¶¶ 20–21. Williams reported the truck deficiencies to his supervisors several times, but they ignored his reports. Id. at ¶¶ 22–27.

2

Williams also alleges that these reports constituted "protected whistleblower activity" under several laws. Id. at ¶¶ 31–32.

He then describes how in April 2019 Defendants suspended Williams for not wearing safety goggles. Id. at ¶ 35. In response, Williams' mother went to Defendants' workplace and "advocate[d] on [Williams'] behalf as Defendants had not taken action to address its disparate treatment and instead retaliated against him." Id. at ¶ 36. Yet, Williams' supervisor and project manager purportedly told Williams' mother that "no one wanted [Williams] there." Id. After, Williams alleges, that in mid-2019 he reported more deficiencies with his work vehicle, but Defendants did not redress the issue, causing Williams to be "the only black utility worker with an old work truck," which required Williams' to perform intense manual labor. Id. at ¶¶ 37–38. The last alleged incident involved Williams' manager allegedly kicking him after thinking he was asleep, although Williams only appeared asleep as he wore sunglasses. Id. at ¶ 39. Like prior instances, Williams alleges Defendants did not treat white coworkers who wore sunglasses similarly but couches this allegation as "retaliatory harassment." Id. at ¶¶ 39–40. Eight days later, Defendants fired Williams. Id. at ¶ 41. Williams pleads that "Defendants alleged justifications for [his] termination were contrived based on [his] race and in retaliation for his reports of race discrimination and actual or suspected safety violations . . . ." Id. at ¶ 45.

After his termination, Williams allegedly filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶ 6. He then brought this lawsuit in state court on September 17, 2021 (Doc. 4), and OMI removed the action with Jacob's consent to this Court (Docs. 1, 2). In his Second Amended Complaint, Williams alleges ten counts, with half the counts brought against Jacobs and half against OMI:

- **Count 1**: Race Discrimination Under the Florida Civil Rights Act (FCRA) (Jacobs)
- **Count 2**: Race Discrimination Under the FCRA (OMI)
- **Count 3**: Retaliation Under the FCRA (Jacobs)
- **Count 4**: Retaliation Under the FCRA (OMI)
- **Count 5**: Private Whistleblower Retaliation Under § 448.01, Florida Statutes (Jacobs)
- **Count 6**: Whistleblower Retaliation Under § 448.01, Florida Statutes (OMI)
- **Count 7**: Race Discrimination Under 42 U.S.C. § 1981 (Jacobs)
- **Count 8**: Race Discrimination Under 42 U.S.C. § 1981 (OMI)
- **Count 9**: Retaliation Under 42 U.S.C. § 1981 (Jacobs)
- **Count 10:** Retaliation Under 42 U.S.C. § 1981 (OMI)

Id. at ¶¶ 50–111. Within the Counts, the allegations against each Defendant are indistinguishable from one another. (Compare Count 1, ¶¶ 50–58, with Count 2, ¶¶ 59–67). Further, each Count largely incorporates all, or almost all,

of the facts alleged. Id. at ¶¶ 50, 59, 68, 75, 82, 90, 98, 61 (Count 8), 98 (Count 9), 105 (Count 10).[2] Now, Defendants move to dismiss Williams' Second Amended Complaint. (Doc. 13).

In their motion, Defendants raise three arguments for dismissal. First, Defendants contend that Williams' Second Amended Complaint is an impermissible shotgun pleading. (Doc. 13 at 4–7). Second, Defendants argue Williams failed to meet the administrative prerequisites for bringing his FCRA claims. Id. at 7–11. Third, Defendants claim Williams fails to state claims for the remaining Counts. Id. at 11–16.

## II.  DISCUSSION

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not

---

[2] Counts 8, 9, and 10 are incorrectly numbered, which has caused duplicative-numbered paragraphs in the Second Amended Complaint. For clarity, when the Court refers to paragraphs in the incorrectly numbered Counts, the Court will note the Count next to the paragraph number.

obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. Id. at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Defendants focus on the second type of shotgun pleading, arguing the Second Amended Complaint contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," as Williams incorporates all, or almost all, of his factual allegations into every Count. (Doc. 13 at 4). Counts 1, 2, 7, and 8 (the race discrimination claims) each incorporate all 49 fact paragraphs alleged, and Counts 3, 4, 5, 6, 9, and 10 (the retaliation and whistleblower claims) allege almost all 49 paragraphs, except for two to three. (See Doc. 27 at ¶¶ 50, 59, 68, 75, 82, 90, 98, 61 (Count 8), 98 (Count 9), 105 (Count 10)).[3] The unincorporated paragraphs generally involve the first incident where Defendants allegedly improperly suspended him for

---

[3] Counts 3, 4, 9 and 10 do not incorporate paragraphs 16 through 18 and Counts 5 and 6 do not incorporate paragraphs 16 through 19.

6

performing a task on private property and Williams reported his suspension to Defendants as discrimination. Id. at ¶¶ 16–19. Williams claims to have excluded those allegations from his retaliation and whistleblower Counts because it was the first incident of race discrimination that caused later retaliation and/or other instances of race discrimination. (Doc. 24 at 3–6). In other words, Williams seems to argue that all of the alleged facts support all of his claims, other than the first incident of discrimination, because all incidents in 2019 were either retaliation, race discrimination, or whistleblowing. Id.

But herein lies the confusion to Defendants. Although multiple alleged facts can support multiple counts, the factual allegations here are so enmeshed, it is difficult to discern which facts are alleged acts of retaliation, race discrimination, or both. (See e.g., Doc. 27 at ¶ 27 ("The intentional disregard for Plaintiff's safety is a clear example of retaliatory conduct against Plaintiff based on his race, based on his reports of disparate treatment based on race and based on his reports as a whistleblower."); ¶ 33 (alleging that Defendants provided white employees safer or newer work vehicles, yet such allegation is incorporated in Williams' retaliation and whistleblower claims); ¶¶ 41–42 (alleging Defendants fired Williams on "contrived allegations" and that Defendants "did not treat their white employees similarly;" yet, these allegations are incorporated into the retaliation and whistleblower claims)).

7

Another example involves Williams' Counts 9 and 10 for retaliation under 42 U.S.C. § 1981. See id. at ¶¶ 98–111. In both Counts, Williams alleges he "voiced opposition to unlawful employment practices" and Defendants subsequently retaliated, but it is unclear what "unlawful employment practice" Williams refers to, particularly because he incorporates almost all of his alleged facts into the Counts. See id. at ¶¶ 102 (Count 9), 109 (Count 10).

Simply put, the alleged facts supporting Williams' race discrimination, whistleblower, and retaliation claims overlap almost entirely and Williams' Counts often incorporate allegations that appear unrelated to the claim brought. This makes it challenging, if not impossible, for Defendants to know which facts support each of Williams' claims. See Palmer v. Albertson's LLC, 418 Fed. App'x 885, 889 (11th Cir. 2011) (noting that Federal Rules of Civil Procedure 8 and 10 are violated when a plaintiff alleges a "host of claims" based on discrete facts of discrimination "in just one count");[4] Smith v. City of Atlantic Beach, No. 3:18-cv-1459-J-34MCR, 2019 WL 2330470, at *2 (M.D. Fla. May 31, 2019) ("[W]here Plaintiff includes a litany of wrongdoing over the four-year course of his employment, all incorporated into singular counts of race discrimination and retaliation, it is altogether unclear which discrete acts

---

[4] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

8

form the basis of his claims."); Taylor v. Shands Teaching Hosp. and Clinics, No. 1:20-cv-9-AW-GRJ, 2020 WL 12309503, at *1 (N.D. Fla. June 26, 2020) (dismissing discrimination and retaliation complaint as a shotgun pleading because each count incorporated most of the factual allegations, many of which were unrelated to the alleged claim).

Further, Williams' Second Amended Complaint constitutes the third type of shotgun pleading because of how he has pled Counts 1 and 2, each entitled "Race Discrimination." In those Counts, he appears to include separate causes of action, one premised on disparate treatment and the other on a hostile work environment. (See Doc. 27 at ¶¶ 50–58, 59–67). For example, in Count 1, Williams asserts a claim of disparate treatment race discrimination against Jacobs based on allegations that he was "treated differently than similarly situated employees of Defendants who are white . . . ." Id. at ¶ 52. However, in the same sentence he alleges that he "has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race." Id. He further alleges that Jacob's "actions and inactions created, perpetuated and facilitated an abusive and offensive work environment . . . ." Id. at ¶ 54. Thus, Williams appears to combine a race disparate treatment discrimination claim with allegations of a hostile work environment. In another case before this Court, Williams' counsel was previously cautioned not to plead both claims in one Count. See Hampton v. MTC Medical, LLC, No. 3:21-cv-449-MMH-PDB, 2021

9

WL 1813896, at *1 (M.D. Fla. May 6, 2021) (Howard, J.). Yet, despite Judge Howard's previous ruling, Williams' counsel has pled <u>identical</u> allegations in this case. (<u>See</u> Doc. 27 ¶¶ 52, 54; Doc. 3 at ¶¶ 30, 32, <u>Hampton v. MTC Medical, LLC</u>, 3:21-cv-449-MMH-PDB (M.D. Fla.)).

The Eleventh Circuit has articulated that shotgun complaints are "altogether unacceptable," as they "exact an intolerable toll on the trial court's docket . . . ." <u>Cramer v. State of Fla.</u>, 117 F.3d 1258, 1263 (11th Cir. 1997). Accordingly, Williams must replead his claims to cure these deficiencies and provide clear notice to Defendants of which facts support each Count. When Williams repleads, the allegations must be clearly tied to one of the causes of action. And each count must incorporate only allegations relevant to it. <u>See</u> <u>Vibe Micro, Inc. v. Shabanets</u>, 878 F.3d 1291, 1295 (11th Cir. 2018) (holding that the district court must dismiss shotgun pleadings and order the party to replead).[5]

---

[5] Because the Second Amended Complaint is a shotgun pleading, the Court need not address the two remaining arguments for dismissal. However, the Court makes one note regarding the exhaustion of administrative remedies. "Ordinarily, a plaintiff need only 'generally allege in [his] complaint that all conditions precedent to the institution of the lawsuit have been fulfilled' to adequately plead exhaustion." <u>Wilson v. Collier Cnty. Florida</u>, No: 2:21-cv-861-JLB-NPM, 2022 WL 767715, at *2 (M.D. Fla. March 14, 2022) (quoting <u>Jackson v. Seaboard Coast Line R. Co.</u>, 678 F.2d 992, 1010 (11th Cir. 1982)). Williams' Second Amended Complaint satisfies this requirement, as he alleges that he "satisfied all conditions precedent" to bringing suit "in that [Williams] filed a charge of discrimination with the Florida Commission on Human Relations [FCHR] and Equal Employment Opportunity Commission." (Doc. 27 at ¶ 6). In

10

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13) is **GRANTED**.

2. Plaintiff's Second Amended Complaint (Doc. 27) is **DISMISSED without prejudice**.

3. No later than **October 4, 2022**, Plaintiff shall file a Third Amended Complaint consistent with the directives of this Order and in compliance with Federal Rule of Civil Procedure 8(a)(2). No later than **October 25, 2022**, Defendants must respond to the Third Amended Complaint.

4. The parties will continue to be governed by the Case Management and Scheduling Order. (Doc. 17).

---

their motion, however, Defendants rely on documents outside of the complaint to argue that Williams' FCRA claims are barred because he failed to allege an FCRA violation in his Charge. (Doc. 13 at 7–11). Further, based on Defendants' exhibits, there is a question whether FCHR investigated Williams' Charge. (Docs. 13 at 8–9; 13-1 at 2). The Court makes no determination on this issue now, as it requires additional facts about what occurred when Williams pursued his administrative remedies, which is beyond the scope of a Motion to Dismiss. See Hendrix v. Snow, 170 Fed. App'x 68, 75 (11th Cir. 2006) (citing Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A., 104 F.3d 1256, 1266 n.11 (11th Cir. 1997) (holding that consideration of matters outside of the complaint requires the Court to convert motion to dismiss into a motion for summary judgment and provide sufficient notice to the parties). However, the Court notes this issue for the parties' consideration.

**DONE AND ORDERED** in Jacksonville, Florida the 12th day of September, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

ksm
Copies:

Counsel of record